IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES D. SPITLER,<br><br>        Plaintiff,<br><br>    vs.<br><br>COMMUNITY HEALTH SYSTEMS, Inc., et al.,<br><br>        Defendants. | Case No. 15-cv-06-SMY-DGW |

MEMORANDUM AND ORDER

This matter comes before the Court on Community Health Systems, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 9). For the following reasons, the Court **DENIES** Defendant's Motion.

On January 5, 2015, Plaintiff filed this action against Defendants National Healthcare of Mt. Vernon, Inc., d/b/a Crossroads Community Hospital, and Community Health Systems, Inc. ("CHS"). The Complaint alleges that Plaintiff was terminated from employment in violation of the Age Discrimination in Employment Act. CHS argues that the Court lacks personal jurisdiction over it as it is a Delaware holding company with no employees, offices or real property in Illinois. Further, CHS asserts that it does not transact business in Illinois, does not maintain control over Crossroads Community Hospital and that its only relationship to Crossroads Community Hospital is as a remote, indirect stockholder. CHS further argues that it exists and operates as a separate and distinct corporate entity that took no action relevant to the allegations in Plaintiff's First Amended Complaint. In response, Plaintiff contends that the Court has both general and specific personal jurisdiction over CHS because CHS exercised its right to

dictate the employment policies to be utilized by Crossroads Community Hospital, that it transacts and does business in the State of Illinois, and that it was Plaintiff's employer.

When personal jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Purdue Research Found. v. Sanofi–Syntholabo, S.A.*, 338 F.3d 773, 782 (7th Cir.2003). If the issue of personal jurisdiction is raised by a motion to dismiss and decided on the written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Id*. Thus, the Court must "take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in favor of plaintiff." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir.2010).

Under Illinois law, the long-arm statute permits personal jurisdiction over a party to the extent allowed under the due process provisions of the Illinois and United States constitutions. 735 ILCS 5/2–209(c); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 714 (7th Cir.2002); *Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir.2000). The Illinois Constitution permits the assertion of personal jurisdiction "when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302, 1316 (Ill.1990).

When interpreting these principles, a court may look to the construction and application of the federal due process clause. *Id* Therefore, if the contacts between the defendant and Illinois are sufficient to satisfy the requirements of federal due process, then the requirements of both the

Illinois long-arm statute and the Illinois Constitution have also been met, and no other inquiry is necessary.

Under federal due process standards, a court can have personal jurisdiction over a defendant only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). The defendant must have purposefully established such minimum contacts with the forum state such that it "should reasonably anticipate being haled into court there," *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), because it has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Burger King Corp. v. Rudzewicz*, 474–75 (1985).

Ordinarily, the jurisdictional contacts of a subsidiary corporation are not imputed to the parent corporation. *Purdue Research Found. v. Sanofi–Syntholabo*, S.A., 338 F.3d 773, 788 n. 17 (7th Cir.2003) "[C]onstitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000). However, where corporate formalities are not observed such that piercing the corporate veil is warranted or where a parent dominates the subsidiary, a court may have personal jurisdiction over a parent based on the subsidiary's contacts. See, e.g., *id*. at 945. The same is true where the subsidiary is acting solely as the parent's agent, and the parent is simply doing business through its subsidiary to shield itself from liability. *Old Orchard Urban*

*Ltd. P'ship v. Harry Rosen, Inc.*, 904 N.E.2d 1050, 1059 (Ill.App.Ct.2009); *Alderson v. Southern Co.*, 747 N.E.2d 926, 944 (Ill.App.Ct.2001)).

Where a plaintiff claims a parent company is subject to a court's jurisdiction because it exercised extraordinary control over the subsidiary, the court considers factors including:

> (1) whether officers or directors are the same; (2) how much control is exerted by parent over daily affairs of its subsidiary; (3) whether parent arranges financing for and capitalization of subsidiary; (4) whether separate books, tax returns, and financial statements are kept; (5) whether parent holds its subsidiary out as agent; and (6) the method of payment made to parent by subsidiary.

*Bray v. Fresenius Med. Care Aktiengesellschaft Inc.*, 2007 WL 7366260, at *6 (N.D.Ill.2007) (citing *Gruca v. Alpha Therapeutic Corp.*, 19 F.Supp.2d 862, 867 (N.D.Ill.1998)). Control that is consistent with investor status—that is, monitoring the subsidiary's performance, supervising the subsidiary's finance and capital budget decisions, and articulating general policies—does not rise to the level necessary to impute the subsidiary's jurisdictional contacts to the parent. 16 James Wm. Moore et al., Moore's Federal Practice § 108.42[3][b] (3d ed.2011); see *United States v. Bestfoods*, 524 U.S. 51, 72 (1998). A controlling shareholder "is entitled to ordain [a subsidiary's] officers and directors, influence executive compensation, approve budgets, gather information about corporate performance, and receive distributions of subsidiary profits." *In re Chocolate Confectionary Antitrust Litigation* ("In re Chocolate"), 674 F.Supp.2d 580, 599–600 (M.D.Pa.2009). "These activities typify standard parent-subsidiary interactions and do not reflect daily, operational control that is the sine qua non of an alter ego relationship." *Id.* at 600.

Here, the Court finds that Plaintiff has made a prima facie showing that the Court has personal jurisdiction over CHS. Clearly, the personnel policy seems to be evidence of the control in the nature argued by Plaintiff. Plaintiff was required to be bound by compliance with the CHS Code of Conduct (Doc. 15, Ex. 2). Also, Plaintiff's periodic employee evaluations evaluated him

on his adherence to all aspects of the CHS compliance program and the Code of Conduct (Doc. 15, Ex. 3). Plaintiff also signed Employee Authorizations to Release Personnel Information to CHS. (Doc. 15, Ex. 1). The Crossroads Community Hospital's personnel policy contains the CHS logo. Additionally, Plaintiff was required to successfully complete CHS compliance training through the CHS website before he began his employment. (Doc. 15, Ex. 1). Plaintiff's affidavit states that he was informed by the hospital's Director of Human Resources that all terminations must be approved through CHS. (Doc. 15, Ex. 1). The pharmacy was also regularly inspected by CHS personnel with any recommendations being adopted. (Doc. 15, Ex. 1). A review of the Code of Conduct indicates that CHS exerts control over the conduct of the employees and imposing requirements upon their ethics and standards of practice. The document contains the following:

> We have created a Code of Conduct which starts with our Statement of Beliefs and is an integral part of our compliance program. It should be used with policies and procedures, applicable regulations and laws and good common sense. It serves as a solid framework for business decisions and it is mandatory that each of us comply with this Code of Conduct every single day.
>
> As a condition of your association with CHS, it is required that you read the Code of Conduct so that you are aware of these standards.

(Doc. 15, Ex. 2, 6).

The Court concludes that there is sufficient evidence to establish a reasonable plausibility of a cause of action against CHS based on the control it exerts over Crossroads Community Hospital. Further, the Court finds that exercising personal jurisdiction over CHS does not offend due process because of the degree of control exercised over Crossroads Community Hospital. Thus, the Court finds that plaintiff has sustained his burden of establishing that the Court has personal jurisdiction over CHS.

Accordingly, Defendant Community Health Systems, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 9) is **DENIED**.

IT IS SO ORDERED.

DATED: April 16, 2015

                                                                                                                   _/s/_ Staci M. Yandle_
                                                                                                                    STACI M. YANDLE
                                                                                                                    DISTRICT JUDGE